**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Francis A. Podlesney,

Plaintiff,

v.

Reliastar Life Insurance Company,

Defendant.

Civil No. 00-1037 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Howard L. Bolter, Esq., Borkon, Ramstead, Mariani & Letourneau, 485 Northstar E, 608 2nd Avenue South, Minneapolis, Minnesota 55402, appeared on behalf of Plaintiff.

Charles F. Knapp, Esq., Faegre & Benson, 2200 Norwest Center, 90 South 7th Street, Minneapolis, Minnesota 55402-3901, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on August 31, 2001, pursuant to Defendant Reliastar Life Insurance Company's ("Reliastar") Motion for Summary Judgment. In his Complaint, Plaintiff Francis A. Podlesney, a former in-house attorney for Reliastar, alleges a violation of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, based on the denial of his claim for severance compensation upon his termination from the company. For the reasons discussed below, the Court grants Defendant's motion and dismisses Plaintiff's ERISA claim with prejudice.

SEP 06 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD SEP 06 2001
DEPUTY CLERK

## Discussion

Mr. Podlesney began working as an attorney for Reliastar in January 1995.[1] While the Reliastar Law Division was based in Minneapolis, Mr. Podlesney worked in Arlington, Virginia, and reported to Reliastar General Counsel Richard Crowl and Associate General Counsel Mike Fischer. In April 1997, at an annual meeting of the Law Division, Crowl toasted Podlesney's anticipated retirement, believing it would occur before the next annual meeting in April 1998. Podlesney would turn 65 on September 8, 1997; however, Podlesney had not officially informed Reliastar of any potential date of retirement.

On June 4, 1997, Podlesney sent a memorandum to Fischer, indicating his concern over a "request" by Fischer that he retire by October 1, and stating that it was his belief that the decision of when to retire was ultimately his to make. In addition, Podlesney suggested that a severance package should be discussed if indeed it was intended that he be terminated. Later in June 1997, Podlesney met with Fischer in Arlington, Virginia, and reiterated such concerns. In late July 1997, Podlesney directed correspondence to Mary Eckman, a Pension Plan Specialist for Reliastar, in order to obtain retirement benefits calculations based on potential retirement dates of September 1, 1997, October 1, 1997, January 1, 1998, and February 1, 1998.

On October 8, 1997, Crowl sent a letter to Podlesney, outlining the retirement terms to which they had agreed during a telephone conversation earlier that day, *i.e.,* a retirement date of December 31, 1997, a lump sum of $10,849.04 for unused vacation, and a consulting agreement for 63 hours of service during 1998 for $9,402.50. On October 21, 1997, Podlesney requested

[1]January 1995 also marked the acquisition by Reliastar of United Services Life Insurance Corporation, a holding company for numerous entities, including Banker's Security Life, Podelesney's previous employer of many years.

that the payment of the vacation and consulting monies be delayed in order to avoid certain tax consequences. That same day, Podlesney e-mailed Eckman for a retirement benefit calculation as of February 1, 1998. In order to grant Podlesney's request, Eckman responded that she would need to know his "date of termination." Podlesney responded by e-mail on October 22, 1997, stating that December 31, 1997 would be his date of termination.

On or about November 10, 1997, in light of the possibility that pension payments would be delayed pending any resolution of severance eligibility, Eckman told Podlesney that he would not receive retirement medical benefits if he did not begin to receive his pension immediately upon leaving his employment with the company. Within 24 hours, however, Eckman called Podlesney back to tell him that she was mistaken, and in fact, that he would be able to receive the benefits even if pension payments did not begin immediately upon his leaving the company. On November 21, 1997, Podlesney e-mailed Crowl stating that he was "upset with the way [he was] being treated with regard to the termination of [his] employment, that he believed his office and position were intended to be terminated, and that consequently he should receive a severance package. Apparently in response to this e-mail, Crowl and Podlesney exchanged further e-mails over the next several days. On December 11, 1997, Crowl wrote a letter to Podlesney in which he: (1) admits that a replacement attorney was hired for the Minneapolis office; (2) denies Podlesney's retirement was simply an alternative to an otherwise intended termination; (3) raises concern that Podlesney's discontent with the retirement process had resulted in a conflict of interest; (4) offers to place Podlesney on paid leave if an insurmountable conflict had arisen; and (5) agrees to be bound by any decision made by the Plan Coordinator with respect to severance.

On December 31, 1997, Emily Davis ("Davis"), a Reliastar attorney, wrote Podlesney requesting that he reconfirm his plans of retirement given his correspondence with Crowl. In

response, Podlesney told Davis that he had accepted the options outlined in the December 11, 1997, letter, that he hoped "additional turmoil" regarding his employment could be avoided, and that he deferred to Crowl as to whether certain work he planned on doing should be considered part of the negotiated consulting agreement. Because Davis read Podlesney's response to be equivocal on the issue of whether he was to retire as of December 31, 1997, Davis sent a new letter on January 7, 1998, asking Podlesney to mark the appropriate choice at the bottom of the page–"I have voluntarily retired." or "I remain an associate."–and to return a copy of the letter to her office. In addition, Davis indicated that Podlesney had been kept on the payroll pending the receipt of his response. Podlesney responded by letter, dated January 12, 1998, stating that he did not believe he was required to sign Davis' letter since he had made his decision to receive retirement income on December 30, 1997.

Under the Reliastar Severance Payment Plan, an associate who has experienced a "qualified termination" is eligible for severance pay based on their years of employment and their willingness to sign a "release of all claims." A "qualified termination" is defined as "an Associate's involuntary termination of employment with the Company and its subsidiaries, except a termination due to the Associate's death, Disability or Retirement." The Plan provides that the Plan Administrator retains "exclusive authority and absolute discretion" to determine a participant's status and eligibility and to interpret the terms of the Plan.

By letter dated February 18, 1998, Podlesney lodged a claim based on the denial of a severance package upon the close of his employment on December 31, 1997. Considering Podlesney's claim and all of the correspondence between Podlesney and Reliastar, the Plan Administrator, Dean Hoppe, determined that Podlesney had voluntarily retired and was therefore ineligible for severance pay. Podlesney appealed Hoppe's decision by letter on May 22, 1998,

again claiming that he had been forced to retire and should be eligible for severance pay, noting Eckman's communications about medical retirement benefits as problematic. Hoppe denied Podlesney's appeal on June 23, 1998, explaining that it was the Company's position that Podlesney had voluntarily retired in light of the earlier correspondence and especially his rejection of the Company's offer that he continue in his position.

Podlesney filed the current lawsuit in January 2000 in Virginia State Circuit Court. Reliastar removed the action to federal district court in the Eastern District of Virginia and later transferred venue to the District of Minnesota. Following an Amended Complaint and a subsequent dismissal of one of Podlesney's claims by stipulation of the parties, the only claim currently before the Court and now the subject of Reliastar's motion for summary judgment is Podlesney's claim alleging a violation of ERISA.

## Discussion

### 1. Standard of Review

Under ERISA, a plan beneficiary has a right to judicial review of a benefits determination by a plan administrator. 29 U.S.C. § 1132(a)(1)(B). Where a plan provides the administrator with "discretionary authority to determine eligibility for benefits," the standard of judicial review is for abuse of discretion, *i.e.*, whether a decision is arbitrary or capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 946, n.4 (8th Cir. 2000) (finding the "arbitrary and capricious" standard to be equivalent of "abuse of discretion" standard). If, however, the plan grants discretionary authority to an administrator who is operating under a conflict of interest, "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Id.* (citations omitted).

The Eighth Circuit has elaborated on this exception by adopting the "sliding scale approach" which enables a court to consider the nature or degree of conflict and/or any alleged procedural irregularity. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160-62 (8th Cir. 1998). Thus, in order to obtain a less deferential review, a plaintiff must first present material probative evidence demonstrating: (1) the existence of a palpable conflict of interest or a serious procedural irregularity; and (2) a serious breach of the plan administrator's fiduciary duty to the plaintiff due to the conflict or irregularity, *i.e.*, "some connection to the substantive decision reached." *Woo*, 144 F.3d at 1161-62 (citing *Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 900, 901 (8th Cir. 1996)). The reviewing court may then adjust its deference given to the administrator depending upon the seriousness of the conflict or irregularity. *Id.* at 1161 (citing *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825-27 (10th Cir. 1996)).

**2. Issues**

The parties agree that the Reliastar Plan Administrator, Dean Hoppe, was granted unlimited discretion under the Plan to determine Podlesney's eligibility for benefits. Consequently, Reliastar argues that the appropriate standard to apply is for the abuse of discretion. To the contrary, Podlesney argues that significant procedural irregularities and a conflict of interest exist warranting the more deferential standard articulated in *Woo*. The Court finds that the more appropriate standard, given the facts of the case, is a review for an abuse of discretion. However, the Court also finds that no matter which standard is applied, Hoppe's decision to deny severance pay to Podlesney did not result in a violation of ERISA.

While the Court is of the opinion that Hoppe's decision is more appropriately reviewed for an abuse of discretion, the Court will address Podlesney's argument under *Woo* as well. In general, the fact that the insurer and the administrator of an insurance plan are the same entity

does not automatically create "a palpable conflict of interest," yet essentially establishes a "rebuttable presumption" of conflict. *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 948-49 (8th Cir. 2000) (citing *Barnhart v. UNUM Life Ins. Co.*, 179 F.3d 583, 587-88 (8th Cir. 1999)). However, "[i]ndicia of bias can be negated by ameliorating circumstances, such as equally compelling long-term business concerns that militate against improperly denying benefits despite the dual role." *Id.* at 948 (quotations and citations omitted). While the insurer and the administrator are clearly the same entity here, the Court finds that any presumptive conflict is overshadowed by Reliastar's long-term interest in rendering fair and consistent determinations for its employees. *See Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998) (finding insurance company's short-term goal of maintaining competitive insurance rates to be outweighed by long-term goal of keeping and attracting customers based on fair and consistent benefits determinations). Accordingly, the Court finds insufficient evidence of a conflict of interest under the first prong of *Woo*.

The Court also finds no merit to Plaintiff's contention that the first prong of *Woo* is established by significant procedural irregularities in Hoppe's review of Podlesney's claim. As evidence of the alleged irregularities, Plaintiff points to: (1) Hoppe's inexperience as a plan administrator; (2) his failure to interview Podlesney; and (3) his failure to consider a document referred to as Attachment II. First, the Court finds no merit whatsoever to the contention that the inexperience of an administrator is an automatic indication of procedural irregularity. While it may be that such inexperience may *explain* actual irregularity, the Court finds it to be wholly irrelevant evidence of the issue at hand, *i.e.*, whether any procedural irregularity actually occurred. With respect to Hoppe's failure to interview Podlesney, the Court has been left with no explanation as to what any interview would have elicited, over and above what information

was already being considered by Hoppe. Moreover, the Court has been presented with no authority that requires such interviews to take place. Indeed, as Reliastar points out, Podlesney had the opportunity of which he took advantage in his written claim and appeal to explain his position, *i.e.*, that he was involuntarily terminated. While Attachment II, a document calculating Podlesney's potential severance pay as of October 31, 1997, certainly raises questions as to why it was generated and whether it reflects an intent to involuntarily terminate Podlesney, there is absolutely no evidence before the Court to explain its source nor why it may not have been within the documents considered by Hoppe. Any explanation posited by the parties thus far, however, amounts only to speculation. Moreover, the Court is unconvinced that any explanation would have served to change Hoppe's decision given the later correspondence upon which he clearly relied and the subsequent offer by Reliastar to keep Podlesney on staff. In sum, the Court also finds no evidence of procedural irregularities to satisfy the first prong under *Woo*.

With respect to the second prong of *Woo*, the Court also finds that Plaintiff has failed to establish a breach of Hoppe's fiduciary duty. It is wholly insufficient to argue that because of a conflict of interest or procedural irregularity that a breach of fiduciary duty has automatically resulted. If that were the case, then the second prong under *Woo* would be completely superfluous. It may be that the egregiousness of certain conflicts or irregularities may serve to indicate the requisite breach, however, the burden remains on the plaintiff to actually establish its nature and existence. Plaintiff has failed to do so here. Even if either a conflict of interest or a procedural irregularity had been established and Plaintiff had also proven that either or both had resulted in a serious breach of the administrator's fiduciary duty to the plaintiff, the Court still finds that Hoppe's decision to deny severance pay to Podlesney was entirely reasonable and supported by substantial evidence as the Court will describe below.

In evaluating for an abuse of discretion, a court looks to whether an administrator's fact-based decision is supported by substantial evidence. *Donaho v. FMC Corp.*, 74 F.3d 894, 900 (8th Cir. 1996). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and requiring "more than a scintilla but less than a preponderance." *Id.* (citations omitted). It is not necessary that the administrator's decision be the *only* decision that could be reached but rather that the determination was possible and reasonable. *Donaho*, 74 F.3d at 899 (explaining proper reading of "reasonable" under ERISA is "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision"). In the course of its evaluation, a court may consider only that evidence that was before the plan administrator when the decision being challenged was made. *Sahulka v. Lucent Techs., Inc.*, 206 F.3d 763, 769 (8th Cir. 2000).

In light of the extensive communications between Podlesney and representatives of Reliastar, the Court finds there to be substantial evidence from which a reasonable person could conclude that Podlesney voluntarily retired and therefore was not eligible for severance payments under the Plan. The Court finds the communications between Podlesney and Davis to be especially convincing because they explicitly and unequivocally contain an offer to Podlesney to continue working at Reliastar, regardless of whether he questioned that possibility previously. To the extent that Podlesney argues that those communications do not also contain an unequivocal rejection of that offer given his perception that the offer was actually hollow, the Court still finds that it was reasonable for Hoppe to determine otherwise. Moreover, in his written decisions, Hoppe provided a thorough explanation of his determination and upon what evidence he relied, in addition to specifically addressing specific issues raised in Podlesney's

appeals. While it is clear to the Court that Mr. Podlesney remains discontent with the circumstances surrounding his leaving Reliastar, the Court finds that there is substantial evidence supporting a determination that he voluntarily retired and accordingly cannot allow his ERISA claim to remain as an avenue through which he voices his concerns.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Defendant Reliastar Life Insurance Company's Motion for Summary Judgment (Doc. No. 23) is **GRANTED**; and

2. Plaintiff's Amended Complaint (Doc. No. 11) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 6, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: **SEP 06 2001**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*